*368 OPINION.
Lansdon :
The petitioner’s contention as to the first error alleged is that he purchased the stock of the Company, as set forth in our findings of fact, at $1.75 a share and that the additional 25 cents a share paid by him to the vendors at date of purchase was an advance by him representing dividends which all understood would soon be declared. In effect, he contends that he loaned the Company $36,-968.25 with which to pay dividends yet to be declared and to that extent his receipt of dividends at April 15, 1922, was the repayment of such loan, or a return of capital and, therefore, not taxable. The facts of record as set out above do not sustain this contention. It is undisputed that the dividend of 25 cents a share was declared and paid after the petitioner became the owner of the stock. Undoubtedly the price paid for the stock was based upon the known or anticipated amount of earnings available or soon to be available for the payment of dividends, but this by no means establishes the contention of the petitioner. On this issue the determination of the respondent is affirmed. Julius S. Rippel et al., 12 B. T. A. 438.
The claimed deduction for bad debts and/or loans relates to both taxable years involved but for convenience this issue as to 1923 will be first discussed and recorded. The loss claimed in the amount of $10,945 appears to represent petitioner’s obligation as guarantor of his brother’s debt to the Company. This obligation was assumed in 1923, but nothing was paid thereon until 1924, and therefore this loss, if any, was sustained in that year as the petitioner reported his income on a cash basis. The action of the respondent in disallowing this amount as a deduction from income in 1923 is affirmed. Morris Sass, 12 B. T. A. 156.
In 1922, petitioner accepted a demand note from his brother in the amount of $25,000 and as endorser or guarantor, paid another note given to the bank by his brother in the amount of $20,000. The first note was a direct promise to pay petitioner the amount thereof on demand. On the second transaction the petitioner contends that by the payment of the guaranteed note at the bank he became his brother’s creditor by subrogation. This may be conceded without in any way affecting the issue. Two questions are involved here, viz.: (1) Were there any debts within the contemplation of law? (2) If the amounts petitioner advanced to his brother were debts, were such debts ascertained to be worthless in 1922? Transactions between persons closely related by blood should be scrutinized with *369 care, but we see nothing in this record that indicates that the petitioner’s advances to his brother were gifts rather than loans. They were made for business purposes and in subsequent years some of them were settled. We are of the opinion that the amounts in question represented debts due the petitioner. The evidence that such debts were ascertained to be worthless in the taxable year is not convincing. J. W. Moore was engaged in a rather speculative business. Although he failed to make any profits in the year in question, the record discloses that shortly after he was able to pay a substantial part of his debts. Petitioner made no demand for the payment of either obligation, nor did he begin any suit at law or pursue any of the other remedies open to creditors for collecting from a debtor who is not without assets. C. S. Webb, Inc., 1 B. T. A. 269. In the taxable year J. W. Moore owned interests in oil wells from which he received production of at least 100 barrels daily. The evidence indicates income from this source, after allowing for costs of lifting and marketing oil, of at least $150 per day. He also owned drilling outfits and other property. In these circumstances we think the petitioner has failed to overcome the presumption that the respondent’s determination of deficiencies is correct.

Decision will be entered for the respondent.